```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
_____
                              )
AMY TISSERA,                  )
                              )
              Plaintiff,      )
                              )        Civil Action
v.                            )        No. 19-12118-PBS
                              )
NRT NEW ENGLAND d/b/a COLDWELL)
BANKER RESIDENTIAL BROKERAGE, )
ANNE WEBSTER, and JOHN FARRELL,)
                              )
              Defendants.     )
_____)
```

**MEMORANDUM AND ORDER**

February 10, 2020

Saris, D.J.

**INTRODUCTION**

Plaintiff Amy Tissera, a real estate agent, alleges that she was sexually harassed by a colleague, co-defendant John Farrell. Both Farrell and Tissera worked as independent contractors for co-defendant NRT New England d/b/a Coldwell Banker Residential Brokerage. Tissera also alleges that co-defendant Anne Webster, the managing broker of their office, was aware of the harassment and refused to take meaningful action to stop it. Tissera alleges ten separate counts: (I) M.G.L. c. 151B §§ 4(1) and 16(A) - Gender Discrimination & Sexual Harassment in Employment, against Farrell and Coldwell Banker; (II) M.G.L. c. 151B, § 4(3C) - Discrimination in Access to, or Membership or

1

Participation in, a Real Estate Service or Organization, against all Defendants; (III) M.G.L. c. 151B, § 4(4A) - Interference with Protected Rights, against all Defendants; (IV) 42 U.S.C. § 3606 and 24 C.F.R. §§ 100.90 and 100.600 - Discrimination in Access to, or Membership or Participation in, a Real Estate Service or Organization, against all Defendants; (V) M.G.L. c. 12, § 11 - Sex Discrimination, against all Defendants; (VI) M.G.L. c. 93, § 102 - Sex Discrimination, against Coldwell Banker; (VII) Intentional Infliction of Emotional Distress, against Farrell; (VIII) Intentional Interference with Contractual Relations, against Farrell; (IX) Assault and Battery, against Farrell; and (X) Invasion of Privacy, against Farrell.

Coldwell Banker and Webster (collectively "Coldwell Banker Defendants") have moved to compel arbitration of the claims against them. Farrell has separately moved to compel arbitration of all claims against him. After hearing, the Court **ALLOWS** the Coldwell Banker Defendants' Motion to Compel Arbitration (Dkt. No. 8). The Court **ALLOWS IN PART** and **DENIES IN PART** Farrell's Motion to Compel Arbitration (Dkt. No. 15). The Court declines to stay litigation of the non-arbitrable claims pending arbitration.

**FACTUAL BACKGROUND**[1]

## I. The Arbitration Agreement with Coldwell Banker

On September 22, 2015, Amy Tissera signed an Independent Contractor Agreement ("ICA") with Coldwell Banker. Section 10 of the ICA was an arbitration agreement, which provides:

> Agreement to Arbitrate Disputes. COLDWELL BANKER, on behalf of itself and its employees, and SALES ASSOCIATE, on behalf of him or herself, and any assistant(s) employed or utilized by SALES ASSOCIATE, agree to resolve any and all timely and legally cognizable controversies, disputes, or claims of any nature in any way arising out of or relating to this Agreement or the relationship between the Parties, including without limitation the termination of the Agreement (hereafter, a "Claim" or "Claims"), exclusively by mandatory, binding, individual arbitration. . . .

Dkt. No. 10-1. at 9. The ICA delegated threshold questions of arbitrability and enforceability to the arbitrator:

> Application of FAA and Questions for the Arbitrator. COLDWELL BANKER and SALES ASSOCIATE agree that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") governs the enforceability, interpretation, and implementation of any and all of the arbitration provisions in Paragraphs 9 and 10 . . . Gateway questions, including but not limited to arbitrability (that is whether an issue is subject to arbitration under Paragraph 10) and the enforceability and interpretation of this Paragraph 10 shall be decided by the arbitrator[.]

Id. at 10-11.

---

[1] Where, as here, a motion to compel arbitration is "made in connection with a motion to dismiss or stay, [the court] draw[s] the relevant facts from the operative complaint and the documents submitted to the district court in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018).

3

The arbitration agreement also imposes a confidentiality requirement:

> The Parties agree that, to the greatest extent permitted by applicable law, all proceedings before the arbitrator will remain confidential between the Parties, including but not limited to any depositions, discovery, pleadings, exhibits, testimony, or award. The Parties will inform third parties (including witnesses) necessary to the proceeding that the proceeding is confidential, and use reasonable efforts to secure that individual's agreement to maintain such confidentiality.

Id. at 10.

## II. **Alleged Harassment**

When Tissera joined the company in September 2015, Coldwell Banker's office in North Beverly had two "star brokers," married couple Cindy Farrell and defendant John Farrell ("Farrell"). Tissera had been recruited to the company by John Farrell after a client of hers bought a home from his client. About a year after starting with Coldwell Banker, during the fall of 2016, Tissera retained the Farrells to sell her own house in Topsfield, Massachusetts.

According to Tissera,[2] this was when John Farrell's harassment began. Farrell began to leave flirtatious gifts for Tissera at her home, including a beer bottle with provocative imagery of a woman on which Farrell had affixed a picture of Tissera's face to make it look as though she were the woman.

---

[2] Farrell disputes many of these facts.

Farrell also sent a message to Tissera while sitting on her bed claiming to be "thinking of her." Tissera told Farrell she was not interested in him romantically and wanted a solely professional relationship. But the unwanted attention continued. In March 2017, at an awards dinner, Farrell told Tissera that she looked "smoking hot" and made suggestive comments. Farrell would find times where he could be alone with Tissera at the Coldwell Banker office by comparing their work schedules.

After Tissera's house sold in May 2017, Farrell continued to show up unannounced at Tissera's open houses, often leaving romantic gifts. When Tissera temporarily resided at her mother's house, she saw Farrell driving down the dead-end street several times a week, waiting for Tissera's mother to leave before approaching the house. Farrell also approached Tissera's children and ex-husband at a grocery store.

Finally, Tissera alleges that Farrell touched her without her consent. The first time this happened was when he showed up at an open house listing, asked Tissera to kiss him, and then attempted to expose himself to her.

### III. Reports to Anne Webster

After this incident, Tissera spoke with Anne Webster to express her discomfort. Tissera claims that Webster did not investigate Farrell's behavior and had only a single informal conversation with Farrell in which he promised to stop. Despite

5

this admonition, he later touched and attempted to kiss Tissera without her consent after an open house. Tissera reported the incident to Webster but again saw no change in Farrell's behavior.

Instead, Webster proposed that Tissera transfer to another Coldwell Banker office. Feeling trapped by Farrell's behavior and Webster's lack of action, Tissera left her employment in October 2017. Even after Tissera left the company, Farrell continued to harass and follow her, sending her gifts, calling from different phone numbers, trying to find out where she lived, and parking immediately next to her outside of her new part-time job.

## IV. Procedural History

In August 2018, Tissera filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). She filed a notice of dismissal with the MCAD in March 2019 and a complaint in Massachusetts state court in September 2019. The Coldwell Banker Defendants removed the case to this Court. The Coldwell Banker Defendants and Farrell have separately moved to compel arbitration of Tissera's claims.

## MOTION TO COMPEL ARBITRATION

## I. Legal Standards

The First Circuit has not addressed the appropriate standard by which to review a motion to compel arbitration. Many

courts within this circuit have adopted a summary judgment standard. See Commonwealth Equity Servs., LLC v. Ohio Nat'l Life Ins. Co., No. 18-cv-12314, 2019 WL 1470131, at *1 (D. Mass. Apr. 3, 2019) (citing cases). However, some courts analyze a motion to compel arbitration as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Baker v. Montrone, No. 18-cv-0913, 2020 WL 128531, at *1 (D.N.H. Jan. 10, 2020), while others treat the motion as outside the Federal Rules of Civil Procedure, see Moss v. Brock Servs., LLC, No. 2:19-cv-00084, 2019 WL 3806375, at *1 n.2 (D. Me. Aug. 13, 2019) ("A motion to compel arbitration is not controlled by Federal Rules of Civil Procedure 12(b)(6) or 12(c) but is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 4."). While the standard may vary depending on the nature of the dispute, the Court need not resolve the issue here because the facts material to the determination of the arbitrability of the claims are undisputed, even if the facts underlying the claims are strongly disputed.

The Federal Arbitration Act ("FAA") directs courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. District courts have jurisdiction to compel arbitration pursuant to section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The purpose of the FAA is to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). The Supreme Court has described the FAA as establishing "a liberal federal policy favoring arbitration." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Moses H. Cone, 460 U.S. at 24). "[A]rbitration is a matter of contract," and courts must enforce arbitration agreements according to their terms. Rent-a-Center, West Inc. v Jackson, 561 U.S. 63, 67 (2010).

Nonetheless, "courts should be extremely cautious about forcing arbitration in 'situations in which the identity of the parties who have agreed to arbitrate is unclear.'" InterGen N.V. v. Grina, 344 F.3d 134, 143 (1st Cir. 2003) (quoting McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994)). "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019).

## II. Coldwell Banker Defendants' Motion to Compel Arbitration

Tissera argues that her arbitration agreement with Coldwell Banker is unconscionable and therefore not enforceable because its confidentiality provisions impermissibly silence victims of sexual harassment. The Coldwell Banker Defendants respond that because Tissera signed a valid arbitration agreement containing a delegation clause, any challenge to the enforceability of the agreement must be referred to the arbitrator.

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Henry Schein, Inc., 139 S. Ct. at 528. Nonetheless, "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." Rent-A-Center, 561 U.S. at 71. A delegation clause is treated as "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." Id. at 70. Therefore, unless the plaintiff "challenge[s] the delegation provision specifically," the court must enforce the delegation provision and "leav[e] any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator." Id. at 72.

Tissera did not challenge the delegation clause specifically in her complaint or in her briefing on this motion.

9

She instead argues that the arbitration agreement is unconscionable because of its confidentiality clause. See Machado v. System4 LLC, 28 N.E.3d 401, 415 (Mass. 2015) (discussing factors for determining when confidentiality provisions are unconscionable). However, the enforceability of the confidentiality clause is different from the enforceability of the delegation clause.

Tissera argues that Rent-A-Center left for courts to decide issues of validity specifically related to an arbitration provision. But the Supreme Court in Rent-A-Center held it could not consider the plaintiff's substantive unconscionability challenges "because none . . . was specific to the delegation provision." 561 U.S. at 73. Similarly, here, this Court cannot reach Tissera's unconscionability arguments because she has not challenged the delegation provision specifically.

The Court is troubled by the agreement's confidentiality provision in the context of a sexual harassment case. But here, the unconscionability of that provision has been delegated to the arbitrator. Tissera is free to argue to the arbitrator that the confidentiality clause is not enforceable because of the serious nature of the allegations.

There has been no challenge to Defendant Webster being considered under the same rubric as Coldwell Banker, so the

Court does not undertake a separate analysis of the arbitrability of Tissera's claims against her.

III. **John Farrell's Motion to Compel Arbitration**

Tissera argues that, even if the Court compels arbitration as to the Coldwell Banker Defendants, Farrell cannot compel arbitration because he is not a signatory to Tissera's contract with Coldwell Banker. Farrell responds that he is entitled to invoke Tissera's arbitration agreement under a theory of either equitable estoppel or agency. As a threshold matter, the Court must determine whether the Court or the arbitrator determines if Farrell, as a nonsignatory, can invoke the arbitration provision. Defendants argued that this dispute must be referred to an arbitrator under the delegation provision. But before a court can refer threshold questions to an arbitrator, it must "determine[] whether a valid arbitration agreement exists." Henry Schein, 139 S. Ct. at 530.

Broadly, nonsignatories cannot invoke arbitration under a contract to which they had no privity. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (citation omitted). However, nonparties may invoke an arbitration agreement where state law applicable to all contracts would allow it. See Arthur Andersen LLP v. Carlisle,

556 U.S. 624, 630-31 (2009) (explaining that state law is "applicable to determine which [arbitration] contracts are binding . . . and enforceable").

Under Massachusetts law there are six grounds on which a nonsignatory can compel arbitration: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) equitable estoppel, and (6) third-party beneficiary." Machado, 28 N.E.3d at 408. Here, Farrell relies only on equitable estoppel and agency.

**A. Equitable Estoppel[3]**

Under the doctrine of equitable estoppel, courts have estopped a plaintiff-signatory "from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the [plaintiff] has signed." InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003) (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995)).

Massachusetts law recognizes two circumstances in which equitable estoppel allows a nonsignatory to compel arbitration: "(1) when a signatory 'must rely on the terms of the written

---

[3] The Court notes that the Supreme Court heard argument this term on whether the New York Convention, which governs international arbitration agreements, allows a non-signatory to compel arbitration based on equitable estoppel. GE Energy Power Conversion France SAS v. Outokumpu Stainless USA LLC, Dkt. No. 18-1048.

12

agreement in asserting its claims against the nonsignatory' or (2) when a signatory 'raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" Machado, 28 N.E.3d at 409 (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th. Cir. 2000)). The first circumstance of reliance does not apply to this case, which does not allege breach of contract claims. See Silverwood Partners, LLC v. Wellness Partners, LLC, 80 N.E.3d 355, 360 (Mass. App. Ct. 2017) ("[T]he assertion of contract claims is an essential element of the first of the two bases for equitable estoppel[.]").

Farrell argues that the second circumstance applies. "In assessing whether a plaintiff has advanced sufficient allegations of concerted misconduct, courts frequently look to the face of the complaint." Machado, 28 N.E.3d at 412. Courts have routinely found that where plaintiffs fail to distinguish between defendants when asserting claims, they have effectively alleged "interdependent and concerted misconduct." See id. (collecting cases).

In this case, Tissera is estopped from avoiding arbitration with Farrell on Counts I through V. Tissera has alleged Counts II, III, IV, and V against all Defendants in her complaint, effectively establishing interdependent and concerted

misconduct. These claims relate to the creation of a hostile work environment by "All Defendants" that adversely impacted Tissera's ability to perform her job properly and severed her membership in a real estate brokers' organization. In her claims, Tissera asserts that it was both Defendant Farrell's actions and the Coldwell Banker Defendants' refusal to adequately respond which perpetuated the hostile work environment. This constitutes interdependent and concerted misconduct by all defendants, which resulted in Tissera having to leave her position.

Count I, while against only Farrell and Coldwell Banker rather than "All Defendants," falls under the same framework. Tissera alleges that the actions of Coldwell Banker – a signatory to her arbitration agreement — and Farrell together "created a work environment so intolerable" as to constitute a constructive discharge. Dkt. No. 1-1 ¶ 71. This Count thus alleges interdependent and concerted misconduct as well.

By contrast, the remaining tort claims against Farrell are not grounded in interdependent and concerted misconduct. Counts VII, VIII, IX, and X for intentional infliction of emotional distress, intentional interference with contractual relations, assault and battery, and invasion of privacy are all based on Farrell's conduct alone, without allegations of related misconduct by Coldwell Banker.

Farrell argues that the tort claims should also be covered under the arbitration agreement as the claims arise out of the same facts. Some courts have compelled arbitration of tort claims brought against an alleged workplace harasser. See, e.g., Dennie v. MedImmune, Inc., Civil Action No. PX 16-3643, 2017 WL 2930462, at *3-*5 (D. Md. July 10, 2017). Those factual circumstances are distinguishable because, there, the accused harasser was the plaintiff's supervisor and the torts occurred in the workplace. See id. at *4. Here, by contrast, much of the alleged harassment occurred outside the scope of Farrell's employment. He is alleged to have stalked Tissera at her home, open houses, and at her mother's house, and even to have approached her children. Moreover, he was not Tissera's supervisor but a peer. Therefore, these Counts do not allege interdependent and concerted misconduct and so will not be subject to arbitration.

**B. Agency**

Farrell also seeks the protection of Coldwell Banker's arbitration agreement with Tissera under agency theory. Because the arbitration of the statutory violations have been compelled through the doctrine of equitable estoppel, only the intentional torts – Counts VII though X – will be analyzed in this section.

"Under an 'agency' theory, a nonsignatory who is an agent of a signatory may compel arbitration for liability arising

under the contract in question." Machado, 28 N.E.3d at 408 n.11 (citation omitted). In other words, when "a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 11 (1st Cir. 2014) (quoting Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993)). However, the agent can only benefit from his principal's arbitration clause where the action at dispute was "undertaken in the course of the [agent's] employment." Id.

Under Massachusetts law, an agent acts within the scope of his employment if: (1) the conduct is the kind the employee was hired to perform; (2) the conduct occurred within the authorized time and space limitations contained in the employment agreement; and (3) the conduct was motivated by a purpose to serve the employer. Maimaron v. Commonwealth, 865 N.E.2d 1098, 1106 (Mass. 2007).

According to the terms of his ICA with Coldwell Banker, Farrell was given a limited scope of authority as an agent:

> SALES ASSOCIATE is engaged as a qualified real estate salesperson under Section 3508 of the Internal Revenue Code as an independent contractor associate with COLDWELL BANKER and shall not otherwise be an agent, servant, employee or partner of COLDWELL BANKER.

Dkt. No. 16-1 at 2. Farrell had no supervisory authority over Tissera, a fellow independent contractor. Coldwell

Banker takes the position that Farrell's alleged misconduct towards Tissera falls well outside the scope of his employment, which was limited to buying and selling real estate. Farrell takes the position that no misconduct occurred but that for purposes of determining arbitrability he was at all times an agent of Coldwell Banker.

According to the complaint, much of the alleged tortious conduct occurred while Farrell (1) was not performing any real estate related activity, (2) was outside of the normal time and space limitations of the employment agreement, and (3) was not serving a purpose of Coldwell Banker. The analysis is complicated by the fact that some of the alleged misconduct occurred in Coldwell Banker's offices. Farrell's alleged misconduct may be the basis for Coldwell Banker's liability in some circumstances. See, e.g., Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir. 2002) (describing test for employer liability under Title VII for harassment by a co-employee); Faragher v. City of Boca Raton, 524 U.S. 775, 803 n.3 (1998) (noting that agency law provides a "starting point" for Title VII liability but that "agency concepts" must be adapted "to the practical objectives of Title VII"). But there is no evidence or even allegation that Farrell's conduct meets the state law definition of agency.

Therefore, the tort claims against Farrell do not fall within the agency exception for non-signatories.

**IV. Stay of Non-Arbitrable Claims**

The Coldwell Banker Defendants urge this Court to stay proceedings as to the non-arbitrable claims. While "[i]n some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration," the Supreme Court expressly left that determination to the discretion of the district court. Moses H. Cone, 460 U.S. at 20 n.23. In light of the seriousness of Tissera's claims against Farrell and her constitutional right to have those claims heard in court, the Court declines to institute a stay.

**ORDER**

The Court **ALLOWS** the Coldwell Banker Defendant's motion to compel arbitration (Dkt. No. 8) and **DISMISSES** those Defendants. The Court **ALLOWS** Farrell's motion to compel arbitration (Dkt. No. 15) as to Counts I, II, III, IV, and V and **DISMISSES** those counts against Farrell. The Court **DENIES** Farrell's motion as to Counts VII, VIII, IX, and X.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge